**WEB PRINTING CONTROLS CO., INC., Plaintiff–Appellant,**

v.

**OXY–DRY CORPORATION, Defendant–Appellee.**

**No. 89–3447.**

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1990.

Decided July 18, 1990.

Roger D. Greer, James P. White, Jacqueline A. Leimer, Laurie A. Haynie, Welsh & Katz, Chicago, Ill., for plaintiff-appellant.

Richard J. Riordan, Paul McCambridge, Robert K. Larson, Riordan, Larson, Bruckert & McCambridge, Dennis R. Schlemmer, Lawrence S. Wick, Leydig, Voit & Mayer, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

▌ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is the main focus of

---

this appeal. In the court below Web Printing Controls Company, Inc. (WPC) brought a "reverse passing off"[1] claim against Oxy–Dry Corporation (Oxy–Dry). After a bench trial the district court entered judgment in Oxy–Dry's favor. The court found as true much of what WPC alleged. It believed, however, that where, as here, a plaintiff seeks to recover noninjunctive relief under the Lanham Act, the plaintiff must show injury caused by actual confusion; and it concluded that WPC failed to make such a showing. Because WPC failed to prove injury caused by actual confusion, the court held that WPC did not establish a violation of the Lanham Act, and, consequently, WPC could recover nothing. In our judgment, the lower court erred. To prove a *violation* of the Lanham Act, proof of injury caused by actual confusion is unnecessary.

## I.

The district court rendered judgment after a bench trial. Rule 52 of the Federal Rules of Civil Procedure requires a court rendering such a judgment to "find the facts specifically and state separately its conclusions of law." The district court's memorandum order and opinion is the apotheosis of what Rule 52 requires. Forty-five pages in length (30 of which concern findings of fact), it organizes a complex factual situation into a form easily fathomable, one to which the knife of legal analysis may readily be applied. Although we differ at one point with the district court's legal analysis, we find completely free from fault its findings of fact, findings we draw on for this summary of WPC's relationship with Oxy–Dry.

WPC is a maker of certain high-tech printing equipment. It has a trademark, which it affixes to its products. In the late '70's WPC was a start-up company with a small share of the printing market and no sales force. To bolster its presence in this market, WPC entered into an oral marketing agreement with Oxy–Dry, which was an established and well-respected manufacturer and distributor in the printing market. The agreement provided for Oxy–Dry salesmen to sell WPC products. Oxy–Dry would handle all sales functions, make the deal with the customer, "buy" the products from WPC and "resell" them to the final customer at a mark-up. WPC would deliver the products and all associated technical services. By this arrangement WPC hoped to establish its product in the printing market and garner goodwill; Oxy–Dry hoped to make sales (and profits) and acquire knowledge of the high-tech market niche that WPC's products served.

In the course of this relationship Oxy–Dry obliterated, hid, or otherwise confused WPC's trademark, usually by attaching a combined Oxy–Dry/WPC trademark to WPC's products (over WPC's trademark) or by taking full credit, one way or another, for WPC's products. WPC complained about Oxy–Dry's practice, but in the end acquiesced, perhaps realizing that there was value in associating strongly with the Oxy–Dry name.

In 1980 WPC apparently changed its mind about the merits of acquiescing in Oxy–Dry's misbranding. The oral agreement between Oxy–Dry and WPC was reduced to writing; one of the clauses of the written agreement was that Oxy–Dry would sell WPC products only under the WPC trademark. It did not. Oxy–Dry continued to misbrand WPC's products, and it took steps to otherwise claim credit for the quality of those products. This time WPC did not acquiesce in Oxy–Dry's practice, and the relationship between the two was ended.

On its own, WPC took steps to secure its market. Although WPC had little evidence showing that Oxy–Dry's misbranding actu-

---

**1.** "Passing off" involves "the selling of a good or service of one's own creation under the name or mark of another." *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir.1981). "Reverse passing off" is, not surprisingly, the reverse of passing off. It occurs "when a person removes or obliterates the original trademark, without authorization, before reselling goods produced by someone else" *Id.*, at 605. Reverse passing off claims are cognizable under 15 U.S.C. § 1125(a). *See id.*, at 606 & n. 5, 607. In this circuit, such claims have an ancient lineage. *See Federal Electric Co., Inc. v. Flexlume Corp.*, 33 F.2d 412 (7th Cir.1929).

ally confused any customers, it spent large sums in a marketing campaign to make sure that none of its customers, or potential customers, were confused. The campaign seemed to work. WPC's sales post-Oxy-Dry grew quite well; this, despite Oxy–Dry's introduction of its own brand of competing, high-tech printing equipment.

## II.

■ In its thorough opinion, the lower court stated its belief that WPC had to prove five elements to "prevail on its claim": (1) Oxy–Dry misbranded WPC's goods; (2) the misbranding was "material"; (3) Oxy–Dry caused WPC's goods to enter interstate commerce; (4) the misbranding caused a likelihood of confusion; and (5) WPC was injured. The court found that the first three elements were proved, and it is clear that they were. Regarding the fourth element, "confusion," the court held that when a plaintiff seeks injunctive relief a "likelihood of confusion" is all that the plaintiff must prove, but when a plaintiff seeks monetary relief the confusion element merges with the fifth element, "injury": a plaintiff then must prove injury as a result of actual confusion in order to prevail. For this proposition the district court relied on *Schutt Mfg. Co. v. Riddell, Inc.,* 673 F.2d 202 (7th Cir.1982). The district court found that WPC had brought forth some evidence of actual confusion, but not more than a *de minimis* amount. Moreover, the court found a lack of evidence showing that WPC was injured. Thus, the court held that WPC had failed to prove injury caused by actual confusion and, as a result, had failed to establish a violation of section 43(a) of the Lanham Act.

But the elements necessary to establish a *violation* of section 43(a) of the Lanham Act do not include any involving actual injury or actual confusion. As set out in 15 U.S.C. § 1125(a), a violation of the Lanham Act is established upon proof only of the following: First, that the defendant used in connection with goods or services a false designation of origin or false description or representation. Second, that the defendant caused such goods and services to enter into commerce. Third, that the plaintiff is a person "who believes that he or she is likely to be damaged as a result thereof." In modern day parlance, and in the context of this suit, a violation of section 43(a) of the Lanham Act is shown by (1) Oxy–Dry's material misbranding of WPC's products, (2) Oxy–Dry's introduction of WPC's products into interstate commerce, and (3) the likelihood that consumers will be confused by Oxy-Dry's material misbranding. *See Schutt, supra,* 673 F.2d at 206. *See also James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 & n. 16 (7th Cir.1976). In the course of its opinion, the district court made clear that these three elements had been proven.[2] Thus, WPC established a violation of the Lanham Act, its lack of proof on actual injury or actual confusion notwithstanding.

It seems to us that the district court confused a Lanham Act violation with a Lanham Act remedy. It confused the elements necessary to prove a breach of the law with elements necessary to justify a certain remedy for that breach. It mixed two stages of inquiry—violation of the law; remedies for the violation—that should be kept separate.

The inquiries should be kept separate because a violation of the Lanham Act can be remedied in more ways than one. The usual way, and the way which in this case riveted the court's attention, is by an award of damages. A plaintiff wishing to

---

**2.** The district court explicitly found the first two elements satisfied. Not so the third, but only because the court concentrated on the actuality, not the likelihood, of confusion. The court's findings of fact, however, make clear that Oxy–Dry's material misbranding gave rise to at least a likelihood of confusion. In its discussion of the "materiality" of Oxy–Dry's misbranding, the court found that Oxy–Dry's misbranding "was likely to influence purchasing decisions." Al-

though the court hedged this statement by saying that it did not "compel the conclusion that the misbranding actually deceived purchasers," it seems inescapable that it does compel the conclusion that the misbranding was likely to deceive purchasers. That a likelihood of confusion was created by Oxy–Dry's actions is evident from this finding and many others presented in the course of the district court's opinion.

recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation, that the violation caused actual confusion among consumers of the plaintiff's product, and, as a result, that the plaintiff suffered actual injury, *i.e.*, a loss of sales, profits, or present value (goodwill). WPC did not prove the elements essential to a recovery of damages, of course, so to it that avenue of relief is foreclosed.[3] Other avenues of relief, however, are not foreclosed. In the past, courts have fashioned wide-ranging relief for a violation of the Lanham Act, allowing remedies such as a recovery of defendant's profits, an award of costs of the action, and, in some exceptional cases, an award of attorney's fees. *See, e.g., Roulo v. Russ Berrie & Co.*, 886 F.2d 931 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738 (7th Cir.1985). *See also General Electric Co. v. Speicher*, 877 F.2d 531 (7th Cir.1989); *NuPulse, Inc. v. Schlueter Co.*, 853 F.2d 545 (7th Cir.1988). These remedies flow not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the need for deterrence, for example, or, in the case of costs, merely from its proof of the defendant's Lanham Act violation. To collapse the two inquiries of violation and remedy into one which asks only of the plaintiff's injury, as did the district court, is to read out of the Lanham Act the remedies that do not rely on proof of "injury caused by actual confusion." And this, of course, is improper.

The district court relied on *Schutt Mfg. Co. v. Riddell, Inc.* for the leveling proposition that injury caused by actual confusion is necessary to prove a Lanham Act violation. In so doing it misread *Schutt,* generalizing incorrectly from a particular case to a universal rule. In *Schutt,* the plaintiff sought recovery of money damages for the defendant's alleged violation of Lanham Act section 43(a). We pointed out that "[t]he test to be used in determining whether a violation has occurred is whether 'the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public.'" 673 F.2d at 206 (quoting *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 572 F.2d 574, 576 (7th Cir. 1978)). As far as Lanham Act violations are concerned, then, we said in *Schutt* exactly what we say here. We went on in *Schutt* to consider the narrower issue of the district court's grant of summary judgment on the plaintiff's *claim for damages. See id.,* at 207. We held that "a higher standard of proof is required for the grant of money damages," that "[a] party seeking such relief is required to show not only the likelihood of ... confusion, but must demonstrate that it has been damaged by actual consumer reliance on the misleading statements." *Id.,* at 206. As far as Lanham Act *damages* are concerned, then, we again said in *Schutt* exactly what we say here.

Thus *Schutt* is entirely consistent with our present opinion. The problem lies not with *Schutt*'s rules of law, but with an improper merging of those rules. In *Schutt,* our statements concerning the claim for damages were not meant to be confused with our statements concerning the claim of violation. The inquiry into each—violation and relief—again was separate. Summary judgment was proper in *Schutt* on the plaintiff's failure to show injury caused by actual confusion only because the summary judgment was limited to the plaintiff's *claim for damages.* If the plaintiff in *Schutt* had made other claims, claims not for damages (in the traditional sense) but for equitable relief such as a request for defendant's profits on an unjust enrichment theory, the plaintiff's

---

3. WPC has its problems with some of the facts found by the district court, mostly those relating to WPC's alleged "injury." The court's findings must stand, however, unless they are clearly erroneous. Fed R. Civ. P. 52. As we have emphasized throughout this opinion, the court's findings are by no means erroneous, clearly or otherwise. The arguments of WPC addressed to the court's findings of fact, therefore, must fail.

failure to show injury caused by actual confusion would have been insufficient to support summary judgment against it. *See Roulo*, 886 F.2d at 941. Thus, the rule for the particular case in *Schutt*, a case involving a claim for damages only, cannot be generalized to fit all claims arising under the Lanham Act. It cannot be generalized to fit the claims in this case.[4]

Accordingly, we reverse the judgment of the district court.[5] In so doing, however, we wish to disturb none of the court's findings of fact and as little as possible of its legal analysis. WPC has shown that Oxy–Dry violated section 43(a) of the Lanham Act. It has not shown, however, that it is entitled to a "grant of monetary damages." Whether it is entitled to a recovery of some or all of the defendant's profits, or to a recovery of its attorneys' fees or litigation costs, we do not decide. We leave those issues on remand for the district court.

REVERSED and REMANDED for further proceedings consistent with this opinion. Circuit Rule 36 shall not apply.

---

4. As WPC's amended complaint clearly shows, WPC prayed for more than just damages. In addition to asking the district court to award damages, WPC asked the district court, among other things, to award WPC Oxy–Dry's profits and WPC's costs, expenses and reasonable attorneys' fees.

5. In addition to entering judgment for Oxy–Dry on WPC's Lanham Act claim, the court below entered judgment for Oxy–Dry on related state law claims pressed by WPC. The court concluded that the legal principles governing the Lanham Act also governed "WPC's common law claim of unfair competition and WPC's claims under the Illinois Consumer Fraud and Decep-

tive Business Practices Act and the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 262, 311–12." The court then held "that WPC has failed to prove these claims for the same reason that it failed to prove its claim under the Lanham Act." We have noted, however, that the district court was wrong in interpreting the principles governing the Lanham Act. It follows that the district court erred in holding that WPC had failed to establish a "claim" under state law, assuming, *arguendo*, that the same principles of law apply to the state actions as apply to those brought pursuant to the Lanham Act.