### DEL MONTE FRESH PRODUCE COMPANY, and Del Monte Fresh Produce, N.A., Inc., Plaintiffs,

v.

### DOLE FOOD COMPANY, INC., and Dole Fresh Fruit Company, Defendants.

No. 00–1171–CIV.

United States District Court, S.D. Florida.

Feb. 22, 2001.

Carlos Mario Sires, Rima Youakim Mullins, Kirkpatrick & Lockhart, Miami, FL, Edward E. Vassallo, Fitzpatrick Cella Harper & Scinto, New York City, Stuart Harold Singer, Boies Schiller & Flexner, Hollywood, FL, for plaintiffs.

Harley Shepard Tropin, Gail Ann McQuilkin, Kozyak, Tropin & Throckmorton, Miami, FL, Robert C. Zundel, Jr., David L. Dawson, Bond Schoeneck & King, Naples, FL, James S. Teater, Jones Day Reavis & Pogue, Dallas TX, Frederick L. McKnight, Wendy L. Thomas, John J. Murphy, Suzanne C. Jones, Jones Day Reavis & Pogue, Los Angeles, CA, Kathleen M. Vanderziel, Dole Food Company, Westlake Village, CA, for defendant.

Brian O'Neill, Frederick D. Friedman, O'Neill Lysaght & Sun, Santa Monica, CA, Gerald J. Houlihan, Houlihan & Partners, Miami FL, for Daniel W. Funk.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

GOLD, District Judge.

**THIS CAUSE** is before the court upon the defendants' motions to dismiss or to transfer venue (DE # 35, 38). The plaintiffs filed a four-count complaint against the defendants alleging as follows: Count I, reverse palming off in violation of the Lanham Act, 15 U.S.C. § 1125, et seq.; Count II, misappropriation of trade secrets under the Florida Trade Secret Act, Florida Statutes § 688.001 et seq.; Count III, conversion; and Count IV, deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.204 et seq. The court has federal question and diversity subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367(a), and the defendants have waived any objections to personal jurisdiction. The defendants seek to dismiss the complaint based on *forum non conveniens* and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Alternatively, the defendants seek to transfer venue to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons discussed herein, the defendants' venue-based motions are denied, and the defendants' motion to dismiss for failure to state a claim is granted in part and denied in part.

## FACTUAL BACKGROUND

The plaintiffs in this case are Del Monte Fresh Produce Company, a Delaware corporation, and Del Monte Fresh Produce, N.A., Inc., a Florida corporation (collectively referred to as "Del Monte"); each has its principal place of business in Florida. *See* Pl. Compl. at ¶ 2. The defendants are Dole Food Company, Inc., a Hawaii corporation, and Dole Fresh Fruit Company, a Nevada corporation (collectively referred to as "Dole"); each has its principal place of business in California. *See* Pl. Compl. at ¶ 3. The parties in this case are engaged in the development, growth, processing, and distribution of fruits and vegetables. This litigation concerns a dispute over the growth, marketing, and distribution of a certain variety of pineapple.

Del Monte's complaint alleges that, over the course of many years, it and its predecessors developed a new variety of pineapple, which is known as MD–2. Pl. Compl. at ¶ 5. The testing and development of the MD–2 variety occurred in Hawaii. Sometime after, Del Monte sent MD–2 plant materials to Costa Rica for further study in the nurseries of that country. *See* Pl. Compl. at ¶ 8. These pineapples had the advantage of a higher vitamin C content, a sweeter taste, more fiber, brighter color, a more pleasant smell, and a milder texture.

In time, Del Monte ascertained that the MD–2 variety flourished in the soil and climate of Costa Rica, so it began to propagate the pineapples in its plantations located in that country. *See* Pl. Compl. at ¶ 9. In 1996, Del Monte began to sell the MD–2 variety in the United States under the name of "Del Monte Gold Extra Sweet." *See* Pl. Compl. at ¶ 5. At present, this brand of pineapple accounts for approximately forty-five percent of the pineapple market in the United States. *See* Pl. Compl. at ¶ 7.

In 1991, a Costa Rican farm known as Cabo Marzo, which was a seller of pineapple to Dole, allegedly obtained Del Monte's MD–2 variety plant material. Del Monte claims that Cabo Marzo obtained the MD–2 variety unlawfully from Del Monte's Costa Rican plantations. Pl. Compl. at ¶ 10. In 1995, Dole purchased the MD–2 plant material from Cabo Marzo and began to propagate it to compete with Del Monte. *See* Pl. Compl. at ¶ 12. In 1999, Dole began to sell the pineapples that it allegedly had developed from the MD–2 variety throughout the United States under the brand name of "Dole Premium Select." *See* Pl. Compl. at ¶ 14. According to Del Monte, both Cabo Marzo and Dole knew that the MD–2 variety belonged exclusively to Del Monte. Del Monte further claims that when Dole represented to the pineapple trade that it had developed the "Dole Premium Select" brand of pineapple as a "new, super sweet" variety to compete with the "Del Monte Gold Extra Sweet," Dole knew or should have known its representations were false. Pl. Compl. at ¶ 15.

## DISCUSSION OF DOLE'S MOTIONS

### I. Motion to Dismiss Based On *Forum Non Conveniens*

The first motion to be considered is Dole's motion to dismiss for *forum non conveniens*. The doctrine of *forum non*

*conveniens* "authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1218 (11th Cir.1985) (per curiam). A court conducting *forum non conveniens* analysis must begin with the premise that the plaintiff's choice of forum rarely should be disturbed. *See Doe v. Sun Int'l Hotels, Ltd.*, 20 F.Supp.2d 1328, 1329 (S.D.Fla.1998) (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

Further consideration of a *forum non conveniens* motion involves a two tier analysis. *See Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 951 (11th Cir.1997). First, the court must determine whether or not an alternative forum exists that is both available and adequate. *See id.* If an appropriate forum does exist, the court then must weigh the private and public interests in adjudicating the case in the available forum. *See id.* Dismissal for forum non conveniens is warranted when the court determines that the private and public interests favor adjudication of the matter in the alternative forum. Dole has invoked the doctrine of *forum non conveniens*, arguing that Del Monte's complaint should be dismissed because Costa Rica is the appropriate forum to decide merits of the parties' dispute. For the reasons discussed below, Dole's arguments are rejected.

### A. Alternative Forum

The burden of demonstrating that an appropriate alternative forum exists is not a heavy one, but it rests with the party seeking dismissal. *See Sun Int'l Hotels*, 20 F.Supp.2d at 1329. As the

Eleventh Circuit has explained, "Generally, a defendant satisfies the first prong of the [*forum non conveniens*] analysis by showing that it is 'amenable to process in the other jurisdiction.'" *BCCI Holdings,* 119 F.3d at 951 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)) (internal quotation marks omitted). The fact that the substantive law of the alternative forum may be less favorable to the plaintiff does not render the alternative forum inadequate. *See Reyno,* 454 U.S. at 247, 102 S.Ct. 252 ("The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry."). It is only when "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all" that the change in substantive law becomes a consideration. *Id.* at 254, 102 S.Ct. 252.

■ In the present case, Dole argues that Costa Rica is an adequate alternative forum because Dole has consented to the jurisdiction of the Costa Rican courts for the purposes of resolving the parties dispute. *See* Thomas Affid. at ¶ 2. According to Dole, the fact that Costa Rica has not enacted a remedial scheme similar to the Lanham Act is inconsequential. *See Lockman Found'n v. Evangelical Alliance Mission,* 930 F.2d 764, 768–69 (9th Cir. 1991) (affirming *forum non conveniens* dismissal even though plaintiff could not assert Lanham Act claim in Japan); *Lana Int'l Ltd. v. Boeing Co.,* 1995 WL 144152 *2 (S.D.N.Y. Mar.30, 1995) (granting *forum non conveniens* dismissal even though foreign court did not recognize Lanham Act). Dole argues that this is because Costa Rican courts would permit comparable recovery by recognizing claims based upon theft and fraud of intellectual property. *See* Tristan Affid. at ¶ 3–8. As

a final argument, Dole contends that Del Monte's opposition to a dismissal based on *forum non conveniens* conflicts with arguments made by Del Monte in a prior litigation, where Del Monte actually sought a dismissal in favor of Costa Rican courts.

Each of the points raised by Dole is without merit. Dole's consent to personal jurisdiction in Costa Rica and Costa Rican courts's recognition of claims involving intellectual property is not dispositive. The only proof that Dole has submitted in support of its arguments that the Costa Rican courts would consider Del Monte's claims is an affidavit by a former Costa Rican Chief Justice. *See* Quiros Affid. at ¶ 4. What Dole fails to mention is that this affidavit was prepared for a prior litigation in the Hawaii District Court where Dole and Del Monte were sued by Costa Rican farmers who allegedly were injured by pesticides. The affidavit was not designed to address this litigation, which does not involve personal injury claims, but claims of unfair trade practices. Moreover, the Hawaii litigation involved claims by Costa Rican citizens against American corporations, not claims by American corporations against other American corporations. It may have been appropriate, under the circumstances of the Hawaii litigation, for Dole's expert to conclude that Costa Rica would assert jurisdiction over that case, but the expert's affidavit was not designed to address the circumstances of this case.

Although Del Monte was not required to do so in light of Dole's failure to present proof in support of its argument, Del Monte has submitted an affidavit to establish that Costa Rican courts lack subject matter jurisdiction over this case because it involves claims exclusively between American parties contesting United States property rights. *See* Hernandez Affid. at ¶ 3. Costa Rica's lack of jurisdiction over this dispute makes the cases cited by Dole

in their legal memorandum inapplicable. If the court were to grant Dole's motion, Del Monte would be left without a forum to adjudicate its disputes. This would effectively leave Del Monte with "no remedy at all," and, therefore, no adequate forum. *Reyno*, 454 U.S. at 254, 102 S.Ct. 252.

Del Monte's affidavit further states, "There is no treaty or international convention under which a Costa Rican Court could issue an injunction decree with extraterritorial validity. Costa Rican Courts have no authority to issue a worldwide injunction." Hernandez Affid. at ¶ 10, 11. An extraterritorial injunction is precisely the remedy that Del Monte seeks. Even if Costa Rica had jurisdiction over this matter, Del Monte again would be left with "no remedy at all" if Costa Rican courts could not enjoin Dole's activities in the United States and Honduras, where Dole grows its pineapples. In contrast, it is well-established that a United States district court is the proper jurisdiction to "award relief to an American corporation against acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 281 (1952), 73 S.Ct. 252, 97 L.Ed. 319 (enjoining, under Lanham Act, defendant's assembly of counterfeit watches in Mexico that were later sold or transferred to United States where parties were American corporations); *see also American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408 (5th Cir.1983) (holding denial of *forum non conveniens* motion proper where American corporation sought to enjoin another American corporation's Lanham Act violations in Saudi Arabia).

Moreover, Dole is incorrect to state that the court should dismiss Del Monte's arguments as inconsistent with the position it has asserted before other district courts.

As already mentioned, the Hawaii litigation involved Costa Rican citizens' claims of personal injury due to pesticide exposure, and these injuries were incurred only in Costa Rica. Also, claims identical to those in the Hawaii case already had been dismissed by at least three other United States District Courts. Under those circumstances, it was appropriate for Del Monte to argue for dismissal on the basis of *forum non conveniens*. Because the facts of the two cases are so dissimilar, it is not necessary for Del Monte to maintain the same position.

In sum, Dole has not shown that Costa Rica is an adequate alternative forum. Dole has failed to cite a single case where a United States court has invoked the doctrine of *forum non conveniens* to dismiss an action between United States corporations seeking to determine their rights to market and sell a product that is sold throughout the United States. In contrast, Del Monte has demonstrated court that Costa Rica actually would be inadequate to adjudicate the parties' dispute, and it has cited cases such as *Steele* and *American Rice, Inc.* to support its position that this case belongs in a United States district court. Accordingly, Dole's motion to dismiss based on *forum non conveniens* is denied on this ground alone.

### B. Private and Public Interests

■ Besides failing to demonstrate that Costa Rica is an adequate alternative forum, Dole's motions likewise fails to meet the second prong of the two-part *forum non conveniens* test; that is, as discussed below, Dole has failed to establish that the private and public interests favor adjudication in the alternative forum.

#### 1. Private Interests

Private considerations in the *forum non conveniens* analysis are those interests

that affect the convenience of the litigants. *See Reyno,* 454 U.S. at 241, 102 S.Ct. 252. Among the relevant private factors are "the relative ease of access to sources of proof, ability to obtain witnesses, and all 'other practical problems that make trial of a case easy, expeditious and inexpensive'." *BCCI Holdings,* 119 F.3d 935, 952 (11th Cir.1997) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *see also Gonzalez v. Naviera Neptuno A.A.,* 832 F.2d 876, 878 (5th Cir.1987).

According to Dole, the factors related to private interests favor Costa Rica because many of the third-party witnesses and much of the documentary evidence are located there. In particular, Dole has expressed some concern over its ability to compel production of documents and witnesses located in Costa Rica as long as the case is litigated in the United States. If suit is maintained in the United States, Dole may be correct that the parties may not have compulsory process over the Costa Rican witnesses.[1] By the same token, if suit is brought in Costa Rica, and presuming that those courts have jurisdiction, the parties will lack compulsory process over United States witnesses and evidence. In any event, these are risks that Del Monte must have weighed in deciding to bring suit in the United States.

Dole further argues that the need for Spanish interpreters is another indication that this matter should be litigated in Costa Rica. Dole has provided the court with no basis from which to conclude that any witnesses, other than a handful of farmers and experts, are located in Costa Rica, and some of those witnesses appear to be under Dole's control. *See Reid–Walen v. Hansen,* 933 F.2d 1390, 1397 (8th Cir.1991) (reversing *forum non conveniens* dismissal where defendant did not provide court with names of Jamaican witnesses or establish that there were clearly more witnesses in Jamaica than the United States); *Doe v. Sun Int'l Hotels, Ltd.,* 20 F.Supp.2d 1328, 1330 (S.D.Fla.1998) (noting that witnesses and evidence that were within defendant's control and located abroad were not a basis for *forum non conveniens* dismissal). In fact, resolution of this matter in Costa Rica probably would prove to be more onerous because this case also involves witnesses from the United States and Europe. No matter where trial is held, witnesses will be inconvenienced.[2] As far as Dole's concern for language difficulties, if this matter were to be resolved in Costa Rica, then the parties would need the use of English interpreters Each of these concerns is relevant in the United States and in Costa Rica, but they must be evaluated "in light of the increased speed of travel and communication which makes ... no forum 'as inconvenient [today] as it was in 1947.'" *Frink Am., Inc. v. Champion Rd. Mach. Ltd.,* 961 F.Supp. 398, 403 (N.D.N.Y.1997) (quoting *Manu Int'l, S.A. v. Avon Prod., Inc.,* 641 F.2d 62, 65 (2d Cir.1981) (citations omitted)). This is especially true because each party involved in this case is a global corporation with a presence throughout the United States and many other parts of the world. Ac-

---

1. This point may be undermined by the "Interamerican Convention on Missions Rogatories or Letters Rogatory" of January 30, 1975, a multilateral treaty to which Costa Rica is a party and which can be used to compel Costa Rican citizens to give testimony in a United States case.

2. Dole's arguments regarding the private interest factors are discredited by virtue of the fact that Dole has filed a mirror-image complaint of this matter in United States District Court in the Central District of California. If the convenience of the Costa Rican witnesses truly was a concern, Dole would have filed its complaint in Costa Rica, rather than the United States.

cordingly, private interest analysis does not weigh in favor of adjudication of this case in Costa Rica.

## 2. Public Interests

Public interest factors in *forum non conveniens* analysis are those considerations that affect the convenience of the competing forum. *See Reyno*, 454 U.S. at 241, 102 S.Ct. 252. Among the relevant public interest factors are "the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *BCCI Holdings*, 119 F.3d at 953; *see also Chierchia v. Treasure Cay Services*, 738 F.Supp. 1386, 1388 (S.D.Fla.1990) (adding as public factors administrative difficulties for courts in congested centers, court's lack of familiarity with foreign law, and jury duty for members of a community unrelated to the litigation). Analysis of these factors also compels the conclusion that this case should be tried in the United States.

■ It is important to note that the United States has a strong interest in resolving this dispute because the parties are American corporations, and the product involved is sold and marketed almost exclusively in the United States. Costa Rica's lack of interest in this matter is further demonstrated by that country's lack of jurisdiction over this case. *See* Hernandez Affid. at ¶ 3. Additionally, at a glance, Dole appears to be incorrect that this case will require the application of Costa Rican law. This court is likely to apply the Restatement's significant relationships test to the resolution of this dispute, and this test would result in the application of American law. Under the significant relationships test, the rights and liabilities of the parties are to be determined by the law of the country that has the most significant relationship to the occurrence and the parties. *See* Restatement (Second) of Conflicts § 145. Among the factors the court must consider are the needs of the interstate and international systems, the relevant policies of the forum, the interests of other states in the issue, and the basic policies underlying the field of law. *See id.*

While the alleged theft may have occurred in Costa Rica, this fact alone does not establish that Costa Rica has the most significant relationship to this matter. *See American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 415 (5th Cir.1983) ("Merely because the consummation of the unlawful activity [Lanham Act violations involving watch reproductions] occurred on foreign soil is of no assistance to the defendant."). This lawsuit not only involves an inquiry into what actions allegedly were taken in Costa Rica by Dole, but also what its officers knew and what measures they may have ratified from their United States headquarters. The fact that the parties are American corporations and that the sale and marketing of the product is occurring in the United States points favors the United States as having a greater interest. Also, the Lanham Act's international injunctive reach and Congress' concerns with interstate commerce reveals "Congress' intent to exercise its power to the fullest," which in turn shows that the United States has a strong policy concerning commerce. *American Rice, Inc.*, 701 F.2d at 413. These considerations indicate that United States law, rather than Costa Rican, will apply. In light of these facts, the public interests weigh in favor of adjudication in the United States. Accordingly, Dole's motion to dismiss based on *forum non conveniens* could be denied on this ground as well.

## II. Motion to Transfer

■ As an alternative argument, Dole seeks transfer of Del Monte's complaint

pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California. This provision is the statutory codification of the common law doctrine of *forum non conveniens*. Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court, and once a trial judge decides that transfer of venue is justified for the convenience of parties and witnesses and in the interest of justice, the ruling can be overturned only for clear abuse of discretion, and the presumption in favor of the district court judge is heavy. *See Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir.1991) (holding that trial court did not abuse discretion in transferring case that would impose financial hardship on a party no matter where heard).

■ Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public and to conserve time, energy, and money. *See Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964). The movant has the burden of persuading the trial court that the transfer is appropriate and should be granted. *See Factors Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). Whether a transfer is appropriate depends on two inquiries: (1) whether the action "might have been brought" in the proposed transferee court and (2) whether various factors are satisfied so as to determine if a transfer to a more convenient forum is justified. *See Miot v. Kechijian*, 830 F.Supp. 1460, 1465–66 (S.D.Fla.1993)

(denying motion for transfer where above test not met). Applying this test to this case, the court finds that transfer of this case to the Central District of California would be inappropriate.

## A. Whether the Action Might Have Been Brought in Transferee Court

■ The first threshold consideration when deciding the merits of a motion to transfer is whether case may have been brought in the desired district of transfer, which in this case is the Central District of California. *See Miot*, 830 F.Supp. at 1465; *Garay v. BRK Electronics*, 755 F.Supp. 1010 (M.D.Fla.1991). This question, in turn, depends on whether Dole is subject to jurisdiction in California, whether venue is appropriate in the Central District, and whether Dole is amenable to service of process in California. *See Jewelmasters, Inc. v. May Dept. Stores Co.*, 840 F.Supp. 893, 894 (S.D.Fla.1993) (finding that action could have been brought in Central District of California where venue, process, and personal jurisdiction existed in that district). The United States Supreme Court has held that it is not enough to satisfy the "might have been brought requirement" that the defendant waives or consents to jurisdiction in the proposed transferee court. *See Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S.Ct. 1084, 1090, 4 L.Ed.2d 1254 (1960) (holding that, under 28 U.S.C. § 1404(a), "might have been brought" requirement was not satisfied by defendant's consent to jurisdiction). Instead, the plaintiff must have had the right to bring the action in the district where the movant seeks to have the case transferred at the time the complaint was filed. *See id.; see also Harris v. Garner*, 216 F.3d 970., 973 (11th Cir.2000) (interpreting "might have been brought" to refer only to time when action was brought, not the time of the transfer).

In the present case, the subject matter jurisdiction of the Southern District of Florida is based on diversity of citizenship pursuant to § 28 U.S.C. § 1332. The same would be true if this case were brought in the Central District of California. Because Dole has its principal place of business in Westlake Village, California, there is no question that personal jurisdiction, venue, and service of process would have been proper there. Accordingly, this action could have been brought in the Central District of California.

## B. Application of Factors

 After determining that the action could have been brought in the alternative forum, the next consideration is whether the transfer would be for the convenience of parties and witnesses and in the interest of justice. This, in turn, depends on the defendant's ability to satisfy certain factors. These factors include the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the availability of process to compel the presence of unwilling witnesses, the cost of obtaining the presence of witnesses, and the public interest. *See Jewelmasters*, 840 F.Supp. at 895 (listing factors); *Miot*, 830 F.Supp. at 1460 (same).

In support of its motion to transfer venue, Dole states that it is from California, and many witnesses reside in that state because it is the location of Dole's marketing department. On the other hand, Del Monte argues that application of the factors relevant to transfer analysis favor adjudication of this matter in Florida because it is a Florida corporation, some witnesses are located here, the pineapples were sold and marketed in this state (as they were in all fifty states), and Florida is a midpoint between Costa Rica and California, where other witnesses reside.

Because the evidence that is necessary to the adjudication of this matter is dispersed throughout Florida, California, Costa Rica, and Europe, there is no compelling reason to try this matter in California. In its motion, Dole has failed to make the necessary showing to justify a transfer of this case. Without offering proof to support its contention that most witnesses and documents are located in California or to refute Del Monte's allegation that the California witnesses are directly under Dole's control, Dole has done little more than offer conclusory assertions as to the merits of its motion. *See Smith v. Colonial Penn Ins. Co.*, 943 F.Supp. 782, 784 (S.D.Tex.1996) ("[V]ague statements about the convenience of unknown and unnamed witnesses is insufficient to convince this Court that the convenience of the witnesses and the parties would be best served by transferring venue."); *Oller v. Ford Motor Co.*, 1994 WL 143017 *3 (M.D.Fla. Mar.30, 1994) (stating that party seeking transfer must specify names of witnesses to be called to testify at trial); *J.I. Kislak Mtg. Corp. v. Connecticut Bank and Trust Co.*, 604 F.Supp. 346, 348 (S.D.Fla.1985) (denying transfer motion where defendant did not establish by clear showing that other forum was more convenient);. As recognized by the courts, under 28 U.S.C. § 1404(a), a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir.1996) (stating that shifting of inconvenience from defendant to plaintiff did not justify transfer). Because Dole has failed to show that adjudication of this case in Florida is outweighed by a need to try this case in the Central District of California, its motion to transfer venue is denied.

## III. Motion to Dismiss for Failure to State a Claim

As an alternative to its motions to dismiss based on *forum non conveniens* and

to transfer venue, Dole argues that the court should dismiss Del Monte's complaint under Federal Rule of Civil Procedure 12(b)(6). According to Dole, Del Monte has failed to plead sufficient facts to sustain its claims for conversion and violations of the Lanham Act, Florida's Uniform Trade Secrets Act, and Florida's Deceptive and Unfair Trade Practices Act.

## A. Standard of Review for a Motion to Dismiss Under FRCP 12(b)(6)

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

## B. Count I: Violation of Lanham Act

Count I of Del Monte's complaint is for "reverse palming off" under the Lanham Act. *See* 15 U.S.C. § 1125. The Lanham Act is designed to protect against consumer confusion regarding the source of a product. *See Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 120 S.Ct. 1339, 1342, 146 L.Ed.2d 182 (2000) (discussing consumer confusion in light of 15 U.S.C. § 1125(a)); *Burger King Corp. v. Majeed*, 805 F.Supp. 994, 1001 (S.D.Fla. 1992). Section 1125(a) of the Lanham Act, the provision at issue in this case, states:

(1) Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a). This section has been interpreted by courts as prohibiting misrepresentations as to the source of a product primarily in two kinds of activities: (1) false advertising and (2) "palming off" (also called "passing off"), where the defendant sells its products under the plaintiff's name. *See Montgomery v. Noga,* 168 F.3d 1282, 1299 n. 26 (11th Cir.1999) (describing passing off under 15 U.S.C. § 1125(a)).

Section 1125(a) also prohibits a practice called "reverse palming off," in which the defendant sells the plaintiff's product under the defendant's name. *See id.* (describing reverse passing off under 15 U.S.C. § 1125(a)). The typical reverse palming off case involves a situation where the defendant acquires a product manufactured by the plaintiff, removes the plaintiff's mark, affixes the defendant's mark, and sells it as the defendant's product. *See id.* at 1300 n. 27; *Waldman Publ. Corp. v. Landoll, Inc.,* 43 F.3d 775, 779–780 (2d Cir.1994) (describing typical reverse palming off scenario). Courts also recognize claims for reverse palming off where the defendant acquires the plaintiff's product, modifies it slightly, and sells it as its own. *See Montgomery,* 168 F.3d at 1300 n. 27 (holding that defendant's incorporation of plaintiff's computer product into its own CD–ROM product could constitute claim under 15 U.S.C. § 1125(a)); *Woodke v. Dahm,* 873 F.Supp. 179, 189–91 (N.D.Iowa 1995) (listing extensively such cases). According to Del Monte, Dole has engaged in either type of reverse palming off by selling Del Monte's MD–2 variety pineapple, or a derivative thereof, under the brand "Dole Premium Select". Dole has made several arguments in an effort to dismiss this claim, and each is addressed below.

### 1. Ownership

Although Dole did not stress this argument in the briefs it submitted to the court, during oral argument, Dole's primary contention was that Del Monte could not assert a claim under the Lanham Act because it had no ownership rights in the MD–2 variety of pineapple. According to Dole, ownership is an essential element of a reverse palming off claim. Dole argues that, because the MD–2 variety was sold in food markets when it allegedly was misappropriated by Dole, Del Monte could not have owned it. Rather, the MD–2 variety was part of the public domain, and, therefore, was not subject to Lanham Act protection.

#### a. Ownership is Not an Element

Dole's argument fails for several reasons. The first and most obvious reason is that ownership is not required by the language of 15 U.S.C. § 1125(a), the statutory provision from which reverse palming off is derived. Under § 1125(a), "any person who believes that he or she is or is likely to be damaged by such act" may maintain a civil action under the statutory provision.

Moreover, ownership is not a court-imposed element of a reverse palming off claim. As discussed in subsection III, B, 4, below, in order to establish a claim for reverse palming off, a plaintiff must show that: (1) the item at issue originated with the plaintiff; (2) the defendant falsely designated the origin of the work; (3) the false designation was likely to cause consumer confusion; and (4) the plaintiff was harmed by the defendant's false designation. *See Softel, Inc. v. Dragon Med. and Sci. Commun., Inc.,* 118 F.3d 955, 970 (2d Cir.1997). Conspicuously absent from this list or any reported case involving a reverse palming off claim is a requirement that the plaintiff "own" the item in question.

In support of its argument, Dole cites language from *Montgomery v. Noga,*

168 F.3d 1282 (11th Cir.1999), where the court stated that a copyright holder must prove ownership of a valid copyright in order to prevail in a copyright infringement action. *Id.*, 168 F.3d at 1288. The ownership requirement of *Montgomery* is inapplicable to this case because *Montgomery* discussed ownership only as it related to a copyright infringement claim under the Copyright Act, 17 U.S.C. §§ 101 *et seq*, not a reverse palming off claim under the Lanham Act. Nowhere in the court's discussion of reverse palming off cases did it state that a plaintiff had to allege that it owned the item in question. Because the elements of a copyright infringement claim are separate and distinct from those of a reverse palming off action, Dole cannot transfer the elements from one cause of action to those of the other.[3]

The cases that require ownership as an element of a claim under 15 U.S.C. § 1125(a) do not involve palming off or reverse palming off. For example, Dole also relies on *Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir.1984), which did involve a claim under the Lanham Act. In *Congagra*, the court stated, "Our cases have established two elements that Conagra had to prove to merit injunctive relief under § 43(a) of the Lanham Act: (1) that it has trademark rights in the mark or name at issue...." *Id.*, 743 F.2d at 1512. Although 15 U.S.C. § 1125(a) was at issue in *Conagra*, the plaintiff's claim was not for reverse palming off, but for trademark infringement, which is a different theory of recovery under the statutory provision.[4] Because Del Monte has not attempted to

bring an action for trademark infringement, it need not establish the ownership element of such a claim.

### b. Del Monte Has An Interest in MD-2

*Smith v. Montoro*, 648 F.2d 602 (9th Cir.1981), one of the pioneer cases recognizing reverse palming off, thoroughly discusses the policy behind this theory of recovery. The issue in *Smith* was a movie star's standing to bring a claim for reverse palming off against a corporation that substituted another individual's name in its movie credits. The court stated that the "dispositive question" as to whether a plaintiff could bring a reverse palming off claim was whether the plaintiff had "a reasonable interest to be protected against false advertising." *Id.*, 648 F.2d at 608 (citations omitted). The court never mentioned "ownership" in its discussion of who could assert a claim for reverse palming off. Instead, it merely required that the plaintiff have a "reasonable interest."

The United States Supreme Court has addressed the rights protected by the Lanham Act, and like the court in *Smith*, it has indicated that false advertisement claims under 15 U.S.C. § 1125(a) require something less than an ownership interest in property. In *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), the Court stated:

The Lanham Act may well contain provisions that protect constitutionally cognizable property interests-notably, its pro-

---

**3.** In order to state a claim for copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *See Herzog v. Castle Rock Entert.*, 193 F.3d 1241, 1247–48 (11th Cir.1999).

**4.** In order to state a claim for trademark infringement, a plaintiff must show: (1) that it has a mark distinctive enough to deserve protection under the Lanham Act, and (2) that defendant's use of it is likely to cause confusion. *See Nida Corp. v. Nida,.* 118 F.Supp.2d 1223, 1231 (M.D.Fla.2000).

visions dealing with infringement of trademarks, which are the "property" of the owner because he can exclude others from using them.... The Lanham Act's false advertising provisions, however, bear no relationship to any right to exclude; and Florida Prepaid's alleged misrepresentations concerning its own products intruded upon no interest over which petitioner has exclusive dominion.

*Id.,* 527 U.S. at 673, 119 S.Ct. at 2224–25, 119 S.Ct. 2219 (citations omitted). For those claims under 15 U.S.C. § 1125(a) that do protect property interests, such as the infringement claim involved in *Conagra,* 743 F.2d at 1512, ownership is a logical requirement. As indicated by the Supreme Court, however, false advertising claims, such as reverse palming off, "bear no relationship" to property rights, and something less than ownership is required. *See also Maxim's Ltd. v. Badonsky,* 772 F.2d 388, 391 (7th Cir.1985) (stating that "ownership or *some lesser right*" is necessary to control use of name under 15 U.S.C. § 1125(a)) (emphasis added). That interest requirement is satisfied by the first element of a reverse palming off claim-the plaintiff's origination of the item at issue. *See Softel, Inc.,* 118 F.3d at 970 (listing elements). The originator of an item is the proper plaintiff to bring a reverse palming off action because "the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Smith,* 648 F.2d at 607. In its complaint, Del Monte alleges that it developed MD–2 variety, which was later registered under the trademark of "Del Monte Gold." *See* Compl. at ¶ 5. As the originator of the item in question, Del Monte has

sufficiently stated a protectable interest in the MD–2 variety. There is no authority to support Dole's contention that Del Monte also must establish ownership.

### 2. Public Domain [5]

#### a. Del Monte's Argument

█ The second argument asserted by Dole in support of its 12(b)(6) motion is that Del Monte cannot state a reverse palming off claim because Del Monte's pineapples, particularly the MD–2 variety, were in the public domain when Dole obtained the plant material in question. Without reaching the question of whether the MD–2 variety actually was in the public domain, the court concludes that Dole's argument is without merit. Even if Dole acquired the MD–2 plant material from a local supermarket, Del Monte still can assert a claim under the Lanham Act as long as Dole falsely represented the *source* of its Dole Premium Select pineapples. *See Pioneer Hi–Bred Int'l v. Holden Found'n Seeds, Inc.,* 35 F.3d 1226, 1241–42 (8th Cir.1994) (allowing reverse palming off claim for seeds collected by defendant in open field); *Summit Mach. Tool Manuf. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1437 (9th Cir.1993) (allowing reverse palming off claim for lathes sold in public domain); *By–Rite Distrib., Inc. v. Coca–Cola Co.,* 577 F.Supp. 530 (D.Utah 1983) (allowing reverse palming off claim for plaintiff's soft drinks which were obtained by defendant in stream of commerce).

█ According to Dole, Del Monte has no protectable interest in the MD–2 plant material because Del Monte did not patent the article of commerce, and the pineapples were in the public domain. Dole's motion to dismiss contains language from the United States Supreme Court, such as

---

**5.** This subsection's discussion of the public domain issue relates only to count I. It does

not apply to count II, which is for misappropriation of trade secrets.

"an article in the public domain ... can be copied in every detail by whoever pleases." *Compco Corp. v. Day–Brite Lighting,* 376 U.S. 234, 238, 84 S.Ct. 779, 11 L.Ed.2d 669(1964). Dole relies on this language in support of its argument that it cannot be subject to liability for marketing its Dole Premium Pineapples. While it is true that Dole's production of a derivative of the MD–2 variety of pineapple is not a Lanham Act violation, it does not necessarily follow that Dole's methods of marketing its Dole Premium Select pineapples were legal. This is because a reverse palming off claim under the Lanham Act is designed to prevent against unfair competition, which looks at the marketing, not the manufacturing of a product. *See Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 913 (11th Cir. 1986) (citing *B.H. Bunn Co. v. AAA Replacement Parts Co.,* 451 F.2d 1254, 1263 (5th Cir.1971)); *Smith v. Montoro,* 648 F.2d 602, 604 (9th Cir.1981).

#### b. Lanham Act Differs From Trade Secret Law

Del Monte's argument regarding the presence of MD–2 in the public domain confuses the scope of the Lanham Act with that of trade secret protection, which is a product of state law. Articles in the public domain usually are not protected by trade secret law, *see Roboserve, Ltd. v. Tom's Foods, Inc.,* 940 F.2d 1441, 1454–55 (11th Cir.1991) (holding that state trade secret law could not protect vending machine mechanism where machine was sold to third party), but, as discussed in the following subsection, these items are uniformly protected under the Lanham Act.

A district court within the Eleventh Circuit has recognized the distinction between the Lanham Act and trade secret law as follows:

> Though [15 U.S.C. § 1125(a)] encompasses protection against a broad range of deceitful market practices, its protection should not be confused with the protection provided by federal patent law or state trade secret law. [Section 1125(a)] does not prohibit copying of an unpatented product. Products not protected by patent are within the public domain and may be precisely copied and sold by anyone without recompense to or authorization of the inventor.
>
> . . .
>
> Trade secret laws usually require that the information is in fact a secret, i.e. not known or readily discernible to the general public, and that the "owner" of the secret take precautions to prevent the disclosure of the secret to the public.

*Potucek v. Taylor,* 738 F.Supp. 466, 469–70 (M.D.Fla.1990). As stated by the district court, the Lanham Act does not concern itself with the question of whether an item is in the public domain or with the related question of whether the item is a trade secret. These questions are left to state law that protects trade secrets. Accordingly, Dole's arguments regarding MD–2's availability in the public domain have no bearing on Del Monte's claim under the Lanham Act.

#### c. Articles In Public Domain Are Protected Under Lanham Act

Decisions of other courts support the conclusion that the availability of the MD–2 variety to the public does not undermine Del Monte's Lanham Act claim. Although the Eleventh Circuit has not addressed this issue, the former Fifth Circuit has held that an unpatented article of commerce is subject to Lanham Act protection.[6] In *B.H. Bunn Co. v. AAA Replace-*

---

**6.** The Eleventh Circuit adopted as binding precedent all cases decided by the former

*ment Parts Co.,* 451 F.2d 1254 (5th Cir. 1971), the defendant manufactured machine parts by dismantling the plaintiff's unpatented machines and copying those parts. *See id.* at 1263. The court stated, "[S]uch methodology is not unlawful. Unfair competition goes to the question of marketing, not to the question of manufacture. One may be perfectly within his legal rights in producing an item and yet well without them in his method of selling if he markets his own item· in such a way that there is likely confusion as to the source of manufacture." *See id.* According to the court, despite the fact that the defendant could copy the plaintiff's product, it was liable for unfair competition because the defendant used merchandising techniques and symbols similar to those of the plaintiff. *See id.* at 1265–67; *see also G–Force Entertainment, Inc. v. G–Force Partners, Inc.,* 2000 WL 1346699 *2, No. 00–372 (M.D.Fla., Aug. 23, 2000) ("The use of another's unregistered, i.e., common law, trademark, can constitute a violation of ... the Lanham Act where the alleged unregistered trademarks used by the plaintiff are so associated with its services that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source.").

All of the circuits that have analyzed whether an item in the public domain could be subject to a claim for reverse palming off have reached the same result. *See, e.g., Pioneer Hi–Bred Int'l v. Holden Found'n Seeds, Inc.,* 35 F.3d 1226, 1241–42 (8th Cir.1994) (holding that plaintiff had established reverse palming off claim against defendant who modified plaintiff's seeds after obtaining them in open corn

field); *Waldman Publ'g Corp. v. Landoll, Inc.,* 43 F.3d 775, (2d Cir.1994) (holding that Lanham Act claim was not prohibited due to fact that author had not registered copyright); *Summit Mach. Tool Manuf. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1437 (9th Cir.1993) (stating that, even though plaintiff's unpatented lathes were in public domain, a defendant may be guilty of reverse palming off by modifying plaintiff's product for sale and labeling it with defendant's name); *Roho, Inc. v. Marquis,* 902 F.2d 356, 360 (5th Cir.1990) (entertaining reverse palming off claim where defendant copied plaintiff's unpatented mattress but ruling for defendant on merits); *c.f. Hypertherm, Inc. v. Precision Products, Inc.,* 832 F.2d 697, 700–01 (1st Cir.1987) (holding that defendant who had copied plaintiff's swath was not liable for reverse palming off where it represented to public that its swaths were interchangeable with those of plaintiff); *G.D. Searle & Co. v. Hudson Pharm. Corp.,* 715 F.2d 837, 842 (3d Cir.1983) (stating that only imaginable way for copier not to be liable under Lanham Act is to denominate his product as a copy of plaintiff's); *Smith v. Chanel, Inc.,* 402 F.2d 562, 567 (9th Cir.1968) (holding that defendant, who had copied plaintiff's perfume formula, had a right to market it under defendant's name because it identified to public plaintiff's product as competition).

As Del Monte conceded during oral argument, it cannot use the Lanham Act to prevent Dole from copying the MD–2 plant material.[7] *See* Trans. p. 15. Instead, Del Monte's reverse palming off claim is rooted in Del Monte's contention that Dole has gone one step beyond copying Del Monte's MD–2 variety-Dole allegedly has marketed

---

Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

7. As one court has stated, "There was a strong public interest in their doing so, for imitation is the blood of competition." *Smith,* 402 F.2d at 567.

MD–2 variety, or a derivative of it, as its own without giving any credit to Del Monte. Because the courts in *Pioneer Hi–Bred International, Waldman Publishing Corp.*, and *Summit Machine Tools Manufacturing Corp.* (all of which are discussed above) have upheld reverse palming off claims for the corn seeds, books, and lathes that were available to the public, Del Monte cannot be deemed to have waived its reverse palming off claim simply by making its MD–2 variety of pineapple available in food markets.

### 3. Pioneer Hi–Bred International

The Eleventh Circuit has not yet addressed whether a fruit that is sold in local markets can be subject to reverse palming off. The most factually similar case is *Pioneer Hi–Bred International, Inc. v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226 (8th Cir.1994), where the Eighth Circuit was asked to review whether a defendant, who had used the plaintiff's corn seeds to breed a line of corn that it claimed to have been developed through its own efforts, could be held liable under the Lanham Act. *See also Pioneer Hi–Bred Int'l, Inc. v. Holden Found'n Seeds, Inc.*, 1987 WL 341211, No. 81060–E (S.D. Iowa 1987) (lower court decision explaining facts). The Eighth Circuit held that by marketing the corn lines as its own, the defendant had engaged in reverse palming off. *See Pioneer Hi–Bred Int'l*, 35 F.3d at 1242. The court's rationale for its decision was as follows:

> It is uncontested that Holden [the defendant] marketed [its corn lines] as an independently-developed product. Neither its advertising nor its registration under the Plant Variety Protection Act referred to the existence of Pioneer's [the plaintiff] genetic material in its pedigree. This misrepresentation as to the origin of [Holden's corn lines] implicates several concerns protected by the Lan-

ham Act's prohibition of reverse palming off. For instance, Holden's claims of independent development denied Pioneer "the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." ... "The ultimate purchaser is harmed as well by the loss of knowledge of and possible deception regarding the true source of the product or service." ...

*Id.* (citations and footnotes omitted).

Like the plaintiff in *Pioneer Hi–Bred International*, Del Monte has alleged that it developed MD–2 variety and marketed it as its own product under the name "Del Monte Gold." According to Del Monte's complaint, Dole obtained and propagated the MD–2 variety on its own farms. Just as the defendant in *Pioneer HI–Bred International*, Dole allegedly has failed to credit Del Monte as the developer of the pineapple in question. Instead, Dole has "represented to the pineapple trade that the 'Dole Premium Select' pineapple was a 'new, super sweet' pineapple which it had developed to respond in the market to the demand for sweeter varieties." Compl. at ¶ 15. *Pioneer Hi–Bred International* is a persuasive authority for the proposition that Del Monte's claim is cognizable under the Lanham Act.

### 4. The Elements of a Reverse Palming Off Claim Under 15 U.S.C. § 1125(a)

Dole's final basis for dismissal of the Lanham Act claim under Federal Rule of Civil Procedure 12(b)(6) is that Del Monte cannot establish the elements of reverse palming off. Although the Eleventh Circuit has not addressed the requirement for this cause of action, the Second Circuit has held that a plaintiff bringing a claim for reverse palming off

under the Lanham Act must allege the following: (1) that the item at issue originated with the plaintiff; (2) that the origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin. *See Softel, Inc. v. Dragon Med. and Sci. Commun., Inc.*, 118 F.3d 955, 970 (2d Cir.1997) (listing four requirements)

The Seventh Circuit adds a fifth element-the false designation must be material. *See Web Printing Controls Co., Inc. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir.1990)(adding materiality of false designation as fifth element).[8] Dole has not raised the applicability of this fifth element to Del Monte's prima facie case. Instead, the parties rely on the elements listed in *Softel, Inc.* As a result, the court does not reach the question of materiality for purposes of Dole's motion to dismiss.

Del Monte's complaint sufficiently pleads the first and second requirements of a reverse palming off claim under *Softel, Inc.* standard. Del Monte has alleged that the MD–2 variety originated with it by stating, "Through many years of research and development, Del Monte Fresh Produce and its predecessors developed a new variety of pineapple, known as the MD–2 variety . . . ." Compl. at ¶ 5. Del Monte further establishes this element by stating that the MD–2 variety was tested and developed in Hawaii, that Del Monte sent the plant materials to its farms in Costa Rica for further study, and that Del Monte began to propagate the plants in its Costa Rican plantations, *See* Compl. at ¶ ¶ 8–9.

By alleging that Dole wrongfully obtained the MD–2 variety from Cabo Marzo, propagated it in its farms, and sold it under the name "Dole Premium Select" while falsely representing to the pineapple trade that "it had developed" the sweeter pineapple, Del Monte has sufficiently pled the second requirement—that Dole falsely designated the origins of its pineapples. *See* Compl. at ¶¶ 12–15.

Although Del Monte has met the first and second pleading requirements of its Lanham Act claim, Del Monte's complaint does not sufficiently allege the third and fourth elements—that Dole's actions are likely to cause consumer confusion and that Del Monte was injured. While Del Monte need not prove actual consumer confusion, *see Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir.1999) ("[A] plaintiff is not required to provide evidence of actual confusion in order to prove likelihood of confusion."), this does not excuse Del Monte from its failure to allege the third element of its reverse palming off claim. It is not enough for the court to infer that consumers are likely to be confused as to the source of Dole's Premium Select pineapples. Del Monte must allege this specifically in its complaint.

Similarly, while the court may be able to infer that Dole's alleged actions have injured Del Monte in some way, Del Monte has failed to allege this as it relates to its reverse palming off claim. Del Monte has not overlooked allegations of injury as they relate to the other counts of its complaint, so Del Monte should remedy this pleading deficiency with regards to its Lanham Act

---

**8.** In *Web Printing Controls*, the court explained that, in order to establish a claim for reverse palming off under the Lanham Act, a plaintiff need not establish actual injury or actual confusion. *Id.*, 906 F.2d at 1204. Instead, a plaintiff need only show that there is a likelihood that consumers will be confused

by the false representation. *See id.* Actual confusion and/or injury is necessary only when the plaintiff seeks damages as a remedy, but, if a plaintiff cannot establish actual confusion and/or injury, other avenues of relief are not foreclosed. *See id.*, 906 F.2d at 1204–05.

claim as well. Because Del Monte has failed to sufficiently plead the third and fourth elements of its reverse palming off claim, Count I of Del Monte's complaint is dismissed without prejudice. Del Monte shall have twenty days from the date of this order to amend its complaint accordingly.

## C. Count II: Misappropriation of Trade Secrets [9]

■■■ Del Monte has brought a claim against Dole under sections 688.001 et seq. of the Florida Statutes for misappropriation of trade secrets. Florida's Uniform Trade Secret Act displaces tort law regarding trade secret misappropriation. *See All Pro Sports Camp, Inc. v. Walt Disney Co.*, 727 So.2d 363, 367 (Fla. 5th DCA 1999). In order to plead such a claim successfully, a plaintiff must aver that: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. *See* Fla. Stat. § 688.002. To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy. *See American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir.1998) (applying Florida law); *Bestechnologies, Inc. v. Trident Envt. Sys., Inc.*, 681 So.2d 1175, 1176 (Fla. 2d DCA 1996) (defining trade secret). Additionally, if the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret

protection. *See American Red Cross*, 143 F.3d at 1410.

### 1. Whether the MD–2 Variety Is a Trade Secret

■■■ Count II of Del Monte's complaint is for misappropriation of trade secrets under the Florida Trade Secrets Act. *See* Fla. Stat. § 688.001 et seq. Dole claims that Del Monte cannot state a claim for misappropriation of trade secrets under Florida law because a pineapple cannot be protected as a trade secret. Dole cites to language in *Yoder Brothers, Inc. v. California–Florida Plant Corp.*, 537 F.2d 1347 (5th Cir.1976), to support its position. In that case, the court stated:

> We reject Yoder's suggested analogy to trade secret law, claiming that the plant's [a new variety of chrysanthemum] genetic code is the secret. In one sense, the genetic code always remains a secret, even to the breeder. In the more common sense, however, as soon as the plant is released, so are its secrets. We prefer the latter view as the one more in accordance with experience.

*Yoder Bros., Inc.*, 537 F.2d at 1365 n. 16. Dole further states that a pineapple is not information, so as to qualify under the definition of trade secret contained in Florida statutes, section 688.002(4), which defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process...."

Dole's argument is flawed in several respects. First, Del Monte does not seek to protect any pineapple as a trade secret. Rather, it seeks to protect its proprietary interest in the MD–2 variety of pineapple. Dole also incorrectly argues that its reference to a footnote in the *Yoder* case is

9. Because it appears from the face of the complaint that the parties are diverse and the amount in controversy is over $75,000, the court will reach the merits of Del Monte's state claims.

dispositive of whether this court can conclude that a plant can be protected as a trade secret. It is important to note that the language cited by Dole is dicta; it does not reflect the court's holding. In *Yoder*, the court was examining the merits of the plaintiff's antitrust claims. No question of trade secret law was before the court. In passing, the court merely rejected the plaintiff's comparison of its case to trade secret law. Additionally, the facts in *Yoder* do not involve a situation where a competitor obtained the plaintiff's chrysanthemum plants, planted them in their nurseries, and attempted to sell them as their own. Instead, *Yoder* involves a dispute over the legality of distribution agreements for the chrysanthemum plants, a situation which is far removed from the facts of this case.

The court's research has revealed only one case that directly addresses the issue of whether a plant's genetic material constitutes a trade secret. In *Pioneer Hi–Bred International v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226 (8th Cir.1994), which also is discussed in section III, B, 3 of this order, the court held that certain corn seeds developed by the plaintiff and sold by the defendant as its own were trade secrets. The Eighth Circuit arrived at this conclusion even though the seeds were readily available to any purchaser on the market and the defendant had obtained the plaintiff's seeds by taking them from a local farmer's corn field. *See id.* at 1236, *Pioneer Hi–Bred International* establishes that at least one Federal Circuit has squarely recognized that plant material can constitute a trade secret, even if it is readily available to the public. The Eighth Circuit's rationale is particularly applicable to this case because, in *Pioneer Hi–Bred International*, the court was interpreting Iowa's Uniform Trade Secrets Act, which is identical to Florida's Uniform Trade Secrets Act. *Compare* Fla. Stat. § 688.001 et seq. *with* I.C.A. § 550.1 et seq.

Dole asks that the court distinguish *Pioneer Hi–Bred International* from this case on the grounds that the plants appropriated by the defendants in that case reproduced sexually while the plants in this case reproduce asexually. Dole argues that because pineapples can be reproduced simply by planting them in the ground and watering them, they cannot be a trade secret. There simply is no legal or logical basis for such a distinction. Dole has failed to establish a connection between sexual or asexual plant reproduction and the question of whether the MD–2 variety is protected information. Moreover, Dole has failed to show that a pineapple is significantly different from a corn seed, which will eventually develop into an edible plant when planted and watered.

Absent clear authority that such information is not protected under Florida's Uniform Trade Secret's Act, Del Monte's complaint will not be dismissed on the basis that the MD–2 variety is not a trade secret. This is because whether a particular type of information constitutes a trade secret is a question of fact. *See Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir.1998); *Camp Creek Hospitality, Inc. v. Sheraton Franch. Corp.*, 139 F.3d 1396, 1410–11 (11th Cir. 1998); *All Pro Sports Camp v. Walt Disney Co.*, 727 So.2d 363, 368 (5th DCA 1999); *see also* 1 R. Milgram, *Milgram on Trade Secrets*, § 2.23 at 2–32–33 (1984) ("Existence of a trade secret is a question of fact for the determination of the trier of fact, secrecy being a basic element."); *Restatement of Law, Third*, Unfair Competition, § 39, cmt. d ("It is not possible to state the precise criteria for determining the existence of a trade secret. The status of information claimed as a trade secret must be ascertained through a compara-

tive evaluation of all the relevant factors, including the value, secrecy, and definiteness of the information as well as the nature of the defendant's misconduct."). The law is clear that questions of fact cannot be resolved on motions to dismiss because the court must accept the plaintiff's allegations of the plaintiff's complaint as true. *See Malin v. Ivax Corp.*, 17 F.Supp.2d 1345, 1358 (S.D.Fla.1998). In this case, Del Monte has alleged that the MD-2 variety is a trade secret, *see* Compl. at ¶ 19, and the court must take that and the supporting statements as true. Once the parties have completed discovery, Dole may raise this issue again in a motion for summary judgment, at which time the court will apply the appropriate standard to the evidence submitted by Del Monte in support of its allegations.

While it is clear that Del Monte seeks to protect MD-2, Dole correctly states that "it is unclear exactly what aspect of MD-2 Del Monte claims is entitled to trade secret protection." Def.'s 12(b)(6) Mtn. to Dismiss at p. 7. Does Del Monte seek to protect MD-2's genetic code, growth technique, or some other quality? Because this case involves complex factual matters, Dole's motion to dismiss count II is granted without prejudice so that Del Monte can plead more specifically what aspect of MD-2 it seeks to protect as a trade secret.

### 2. Whether Del Monte Has Averred the Remaining Requirements for its Misappropriation Claim

Although Dole's motion to dismiss count II has been granted so that Del Monte can remedy pleading deficiencies, this order addresses Dole's remaining arguments under count II. According to Dole, Del Monte has failed to plead the remaining elements of a misappropriation claim, but a review of the complaint reveals that Del Monte has done more than merely repeat the remaining elements of a claim for misappropriation of trade secrets. Its complaint alleges that it researched and developed the MD-2 variety and took steps to protect its secrecy. Del Monte has alleged sufficient economic value by stating that the pineapple derived from the MD-2 material accounts for forty-five percent of the United States pineapple market. Compl. at ¶¶ 5, 6. The complaint specifies that, in 1995, Dole wrongfully obtained the MD-2 variety from a farm known as Cabo Marzo and that Dole tried to conceal its appropriation of the plant. Compl. at ¶¶ 12, 13. The complaint further states that Dole has been selling the MD-2 variety under the name of "Dole Premium Select." Compl. at ¶ 14. These allegations are sufficient to establish misappropriation under section 688.002(2)(b) of the Florida Statutes, which defines a misappropriation as the "acquisition ... or use of a trade secret by another."

### 3. Whether Del Monte's Claim is Barred by the Statute of Limitations

Dole's final argument in support of its motion to dismiss count II of Del Monte's complaint is that the claim for misappropriation is barred by the applicable statute of limitations. Section 688.007 of the Florida Statutes provides, "An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." According to Dole, Del Monte's claim is barred by this provision because Del Monte filed suit against Dole nine years after learning that Cabo Marzo had acquired MD-2 and four years after learning that Dole had acquired MD-2.

Because it is unclear from the face of Del Monte's complaint that it filed suit against Dole more than three years after it

discovered the alleged misappropriations, Dole's argument is rejected. Although the complaint does allege that Cabo Marzo acquired MD–2 in 1991 and Dole acquired it in 1995, the complaint does not state that Del Monte learned of these facts at the time they occurred. The absence of an indication of the date on which Del Monte discovered the alleged misappropriations prevents the court from determining from the face of the complaint at what time Del Monte's actions accrued. *See Caplen v. Guardian Life Ins. Co. of Am.*, 1996 WL 1057652 *4, No. 96–8359–CIV (S.D.Fla. Oct. 22, 1996) (stating that statute of limitations may be raised on motion to dismiss only if court can determine from face of complaint that limitations period has run); *see also Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir.1982) (stating that statute of limitations defect can be raised in motion for summary judgment where failure to comply with statute of limitations does not appear on face of complaint). If, during discovery, it becomes apparent that Del Monte became aware of Dole's alleged misappropriations more than three years before it filed this claim, Dole may raise the statute of limitations issue again in a motion for summary judgment.

## D. Count III: Conversion

Count III of Del Monte's complaint is for conversion, which is defined as, "[A]n act of dominion wrongfully asserted over another's property inconsistent with his ownership therein. In essence, conversion is an unauthorized act that deprives another of his property permanently or for an indefinite time. It is the disseisin of the owner or an interference with legal rights which are incident to ownership, such as a right to possession." *Burger King Corp. v. Austin*, 805 F.Supp. 1007, 1012 (S.D.Fla.1992) (citations omitted); *see also Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (defining tort and finding that plaintiff had failed to state claim for conversion). Florida courts have divided this description into three elements: (1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. *See Warshall v. Price*, 629 So.2d 903, 904 (Fla. 4th DCA 1993) (analyzing each element to find that plaintiff had established conversion claim).

Dole seeks to dismiss count III of Del Monte's complaint by arguing that Del Monte has not alleged any of these elements, but a review of the complaint indicates that Dole's argument is without merit. Del Monte has established the first element by alleging that Cabo Marzo and Dole wrongfully obtained MD–2 plant material, that Dole attempted to conceal its appropriation of MD–2, that Dole propagated MD–2, and that Dole sold MD–2 under its own name. *See* Compl. at ¶¶ 10–15. Del Monte has sufficiently averred the second element by stating that the MD–2 plant material that was used by Dole was tested and developed by Del Monte and belonged to Del Monte. *See* Compl. at ¶¶ 5, 8, 24. By alleging that Dole sold the pineapples that had been developed by Del Monte under the name Dole Premium Select, Del Monte also established the third element of its conversion claim. *See* Compl. at ¶¶ 14, 15, 24. Accordingly, Dole's motion to dismiss count III of the complaint is denied.

## E. Count IV: Violation of the Florida Deceptive and Unfair Trade Practices Act

In count IV, Del Monte brings a claim for deceptive and unfair trade practices under Florida Statutes §§ 501.204 et seq. Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") pro-

vides, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). A plaintiff seeking to recover under this statute has two potential remedies available. If the plaintiff is an individual consumer, he or she can assert a claim for damages. *See* Fla. Stat. § 501.211(2). If the plaintiff is a competitor of the defendant, it may seek declaratory relief. *See* Fla. Stat. § 501.211(1); *see also Big Tomato v. Tasty Concepts, Inc.,* 972 F.Supp. 662, 663–64 (S.D.Fla. 1997) (holding that competitor could seek only injunction under FDUTPA, not damages).

There is no question that, as a consumer, Del Monte cannot recover damages under the FDUTPA, but Dole seeks dismissal of count IV of Del Monte's complaint on the grounds that Del Monte cannot obtain declaratory relief either. According to Dole, Del Monte has not appropriately requested injunctive relief because count IV of its complaint only states that it "has suffered damages." Compl. at ¶ 27. Dole overlooks subsections A, B, and D of paragraph 27 of Del Monte's complaint, which request injunctions and a declaration by the court that Dole has engaged in unfair and deceptive trade practices. Because Del Monte adequately pleads the relief it seeks, Dole's request for a dismissal as to count IV is denied.

It is therefore:

**ORDERED AND ADJUDGED THAT:**

1. Dole's motion to dismissed based on *forum non conveniens* (DE # 35) is DENIED.

2. Dole's alternative motion to transfer venue (DE # 35) is DENIED.

3. Dole's motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) (DE # 38) is GRANTED WITHOUT PREJUDICE as to counts I and II and DENIED as to counts III and IV. Del Monte has twenty days from the date of this order to file an amended complaint conforming with the court's order.